UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARK JOUBERT, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 4:22-cv-40111-IT |
| | * | |
| HON. JUSTICE MARK V. GREEN in his | * | |
| capacity as Chief Justice of the Appeals | * | |
| Court, HON. JUDITH FABRICANT in her | * | |
| capacity as Chief Justice of the Superior | * | |
| Court, JUSTICE GABRIELLE R. | * | |
| WOLOHOJIAN in her capacity as a Justice | * | |
| of the Appeals Court, JUSTICE JOHN | * | |
| ENGLANDER in his capacity as a Justice of | * | |
| the Appeals Court, JUSTICE KATHRYN E. | * | |
| HAND in her capacity as Justice of the | * | |
| Appeals Court, JUDGE SHANNON | * | |
| FRISON in her capacity as a Judge in the | * | |
| Superior Court, and JOSEPH BERMAN in | * | |
| his capacity as General Counsel at | * | |
| Massachusetts Board of Bar Overseers, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

September 25, 2023

TALWANI, D.J.

Pending before the court is Defendants' Motion to Dismiss (the "Motion") [Doc. No. 6]

claims brought by Plaintiff Mark Joubert against Judith Fabricant and Shannon Frison, Justices

of the Massachusetts Superior Court; Mark Green, Gabrielle Wolohojian, John Englander, and

Kathryn Hand, Justices of the Massachusetts Appeals Court; and Joseph Berman, General

Counsel for the Massachusetts Board of Bar Overseers ("BBO"). The Motion [Doc. No. 6] is

GRANTED for the reasons set forth herein, and Joubert's Complaint [Doc. No. 1] is dismissed.

## I.      Fact as Alleged in the Complaint and Procedural Background

Joubert, a lawyer, entered into a business relationship with William Miley in 2011.

Compl. ¶ 30 [Doc. No. 1]. The business relationship lasted approximately one year; After its

dissolution, Miley filed a complaint against Joubert with the BBO, alleging that Joubert, as

Miley's attorney, committed breach of fiduciary duty, fraud, misrepresentation, negligence, and

malpractice. Id. at ¶¶ 36, 39. In 2013, the BBO, through its Office of Bar Counsel ("Bar

Counsel"), found a lack of evidence that Joubert and Miley had an attorney-client relationship

and issued a Recommendation to that effect. Id. at ¶¶ 41, 47.

In June 2014, Joubert sued Miley in Massachusetts Superior Court for breach of contract,

breach of fiduciary duty, and other unspecified claims. Id. at ¶ 48. Miley counterclaimed for

fraud, misrepresentation, breach of fiduciary duty, malpractice, and negligence. Id. at ¶ 49.

Defendant-Judge Frison heard the case in a bench trial, where she found that an attorney-client

relationship existed between Joubert and Miley and ruled in favor of Miley on all counts. Id. at

¶¶ 50-52. Joubert alleges that Judge Frison improperly allowed relitigation of the issue of the

existence of an attorney-client relationship in violation of the rules of collateral estoppel, and that

she misapplied legal standards, including in her determination that an implied attorney-client

relationship existed. Id. at ¶¶ 58-72. In August 2018, after Judge Frison's decision, the BBO

initiated disciplinary proceedings against Joubert. Id. at ¶ 67.

The Massachusetts Appeals Court reversed the judgment in Miley's favor on the

counterclaims, Compl. ¶ 73 [Doc. No. 1], holding that Miley had not demonstrated damages.

Joubert v. Miley, No. 20-P-506, 2021 WL 2325125, at *4 (Mass. App. Ct. June 8, 2021). The

Appeals Court also affirmed the lower court's finding of an attorney-client relationship and

stated that Joubert "had engaged in self-dealing." Compl. ¶¶ 74-75 [Doc. No. 1]; see also Joubert, 2021 WL 2325125, at *3.

In his Complaint [Doc. No. 1], Joubert alleges that the Appeals Court—specifically the Justices who heard his case—misapplied legal standards in determining that he had an attorney-client relationship with Miley. Id. at ¶ 76. Joubert also alleges that, by stating in their opinion that he engaged in self-dealing, Defendant-Justices Wolohojian, Englander, and Hand committed defamation and libel. Id. at ¶¶ 106-19. In August 2021, the Massachusetts Supreme Judicial Court denied review of Joubert's case. Id. at ¶ 81; Joubert v. Miley, 488 Mass. 1102 (2021). In May 2022, the United States Supreme Court denied Joubert's petition for a writ of certiorari. Joubert v. Miley, 142 S. Ct. 2710 (2022).

Joubert filed a pro se Complaint [Doc. No. 1] in this court on October 6, 2022. The caption specifies that the four Justices are sued in their official capacities, but Joubert also asserts claims against them individually. Id. at ¶¶ 4-9. Joubert seeks compensatory damages and punitive damages from them, id. Count VII (Punitive Damages) (naming the Justices only) and prayer for relief (seeking compensatory damages from the Justices only), as well as declaratory relief, see id. at ¶¶ 128-129.

The caption also specifies that Defendant Berman is sued in his official capacity, but the body of the Complaint includes no allegations against Berman. See Compl. [Doc. No. 1]. Although Joubert lists "All Defendants" in the captions to his § 1983 claims (Counts 1 and 2), the allegations of wrongdoing are directed solely at the Justices. Id.  ¶¶ 87-88, 91, 104. Joubert seeks injunctive relief and declaratory relief as to Berman. Id. Count VI (Injunctive Relief), Count VII (Declaratory Judgment).

3

Defendants filed the pending <u>Motion to Dismiss</u> [Doc. No. 6] Joubert's claims under

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants argue that sovereign

immunity deprives this court of subject-matter jurisdiction over Joubert's claims seeking

monetary damages against Defendants in their official capacities. Defs.' Mem. 4-5 [Doc. No. 7];

<u>see</u> <u>Fed. Deposit Ins. Corp. v. Meyer</u>, 510 U.S. 471, 475 (1994) ("Sovereign immunity is

jurisdictional in nature."). Defendants also challenge Joubert's claims against them individually

under Rule 12(b)(6), contending that those claims are barred by absolute judicial or quasi-

judicial immunity. Defs.' Mem. 5-6 [Doc. No. 7]; <u>see</u> <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430

(1976) (affirming 12(b)(6) dismissal for absolute immunity). Finally, Defendants argue that the

<u>Rooker-Feldman</u> doctrine bars district court review of the state court decisions, and that Younger

abstention bars an injunction against ongoing BBO disciplinary proceedings. Defs.' Mem. 7-9

[Doc. No. 7].

## II.    Standard of Review

When evaluating motions under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6),

the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the

plaintiff's favor." <u>Nisselson v. Lernout</u>, 469 F.3d 143, 150 (1st Cir. 2006) (reviewing 12(b)(6));

<u>Fothergill v. United States</u>, 566 F.3d 248, 251 (1st Cir. 2009) (reviewing 12(b)(1)).

"Because federal courts are courts of limited jurisdiction, federal jurisdiction is never

presumed." <u>Viqueira v. First Bank</u>, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting federal

jurisdiction has the burden of demonstrating its existence. <u>Id.</u> Dismissal under Rule 12(b)(1) at

the pleading stage is appropriate only when the facts alleged in the complaint, taken as true, do

not support a finding of federal subject-matter jurisdiction. <u>Fothergill</u>, 566 F.3d at 251. A

12(b)(1) challenge to the court's subject-matter jurisdiction must be addressed before addressing

the merits of a case. <u>Acosta-Ramírez v. Banco Popular de Puerto Rico</u>, 712 F.3d 14, 18 (1st Cir. 2013).

To survive dismissal under Rule 12(b)(6), a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level[.]" <u>Id.</u> at 545 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). In addition, "an adequate complaint must include not only a plausible claim but also a plausible defendant." <u>Peñalbert-Rosa v. Fortuño-Burset</u>, 631 F.3d 592, 594 (1st Cir. 2011).

## III. Discussion

### A. *Sovereign Immunity Bars Claims for Monetary Relief against Defendant Justices in Their Official Capacities*

The doctrine of sovereign immunity bars claims for monetary relief against the Justices in their official capacities. <u>Coggeshall v. Mass. Bd. of Registration of Psychs.</u>, 604 F.3d 658, 662 (1st Cir. 2010). Without a waiver of sovereign immunity, plaintiffs are prohibited from seeking monetary damages against state officers—such as these Defendants—in their official capacities. <u>See</u> <u>Vaquería Tres Monjitas, Inc. v. Irizarry</u>, 587 F.3d 464, 477-78 (1st Cir. 2009). "[A] suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." <u>Quern v. Jordan</u>, 440 U.S. 332, 337 (1979). That is the case here. As a result, "sovereign immunity [is] applicable to

plaintiff's claims" for monetary damages against Defendants in their official capacities. Warnock

v. Pecos Cnty., Tex., 88 F.3d 341, 343 (5th Cir. 1996).

Contrary to Joubert's contention, Pl.'s Mem. 18-19 [Doc. No. 9], the Massachusetts Tort

Claims Act ("MTCA"), M.G.L. c. 258 § 1 et seq., does not alter this result. While the MTCA

provides a limited waiver of sovereign immunity for claims for injury caused by the "negligent

or wrongful act or omission of any public employee while acting within the scope of his [or her]

office or employment," M.G.L. c. 258 § 2, that waiver for negligence claims does not cover the

intentional torts alleged here. Moreover, as to the § 1983 claim, "neither a state agency nor a

state official acting in his official capacity may be sued for damages." See Johnson v. Rodriguez,

943 F.2d 104, 108 (1st Cir. 1991) (citing Will v. Mich. Dept. of State Police, 491 U.S. 58, 71

(1989)).

For these reasons, the court lacks subject-matter jurisdiction over Joubert's claims for

monetary damages against the Justices in their official capacities.

B.    *Absolute Judicial Immunity Bar Monetary Relief against Defendant Justices*
      *Individually*

Claims for monetary relief against the Justices in their individual capacities are barred by

the doctrine of absolute judicial immunity.

"[I]t is an axiom of black letter law that when a judge carries out traditional adjudicatory

functions, he or she has absolute immunity for those actions." Zenon v. Guzman, 924 F.3d 611,

616 (1st Cir. 2019).  This holds true "even when such acts are in excess of their jurisdiction, and

are alleged to have been done maliciously or corruptly." E.g., Stump v. Sparkman, 435 U.S. 349,

356 (1978); accord Zenon, 924 F.3d at 616 ("The breadth of [judicial immunity] is fulsome,

shielding judges even when their actions are malicious, corrupt, mistaken, or taken in bad

faith.").

Joubert's allegations against the Defendants arise directly from findings and statements made in the context of the Judges' and Justices' judicial orders and opinions. Compl. ¶¶ 58-60, 84-87, 106-19 [Doc. No. 1]; see Joubert, 2021 WL 2325125, at *3. The finding of facts and drafting of judicial opinions are clearly "function[s] normally performed by a judge," and claims arising from these functions are therefore barred by absolute judicial immunity. Stump, 435 U.S. at 362.

For these reasons, Joubert's claims for monetary damages against the Justices in their individual capacities are barred by absolute judicial or quasi-judicial immunity.

C.     *Absolute Judicial Immunity Bars Declaratory Judgment against Appeals Court Justices*

"[A]bsolute judicial immunity means not just immunity from damages, but immunity from suit altogether." Zenon, 924 F.3d at 617 n.10 (citing Mireles v. Waco, 502 U.S. 9, 11 (1991)).  As such, Joubert's claims against the Appeals Court Justices for defamation and libel are also barred by the doctrine of absolute judicial immunity.[1] As discussed supra, judges are absolutely immune for acts performed in their judicial capacities. Stump, 435 U.S. at 355-56; accord Zenon, 924 F.3d at 616. The allegations of defamation and libel arise from a quintessentially judicial function—the drafting of a judicial opinion. See Stump, 435 U.S. at 362.

Joubert asserts that "[t]he fact that judges do of course enjoy absolute immunity is precisely why this Court should act to assure that the [state] court does not publish such defamatory statements…." Pl.'s Mem. 19 [Doc. No. 9]. But Joubert cites no authority for his proposition that absolute immunity must give way in the face of defamation claims, and this

---

[1] Plaintiff does not name the Superior Court Justice in the Defamation and Libel counts. Compl. Counts IV and V [Doc. No. 1].

7

court is aware of none. The Defendant Justices remain protected by absolute judicial immunity for the statements they made in their official capacities as judicial officers.

D.      *The Rooker-Feldman Doctrine Bars Declaratory Judgment against State Court Judges*

Joubert also seeks a declaratory judgment against the Justices on the basis that the Superior Court misapplied a legal standard and the Appeals Court offered insufficient analysis and made defamatory statements in its opinion. Compl. ¶¶ 84-87, 107-13, 128-29 [Doc. No. 1]. This relief is barred by the Rooker-Feldman doctrine. That doctrine exists to prevent precisely this type of action: a "case[] brought by [a] state-court loser[] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). As a consequence of Rooker-Feldman, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." Lance v. Dennis, 546 U.S. 459, 463 (2006). Thus, while Joubert may be correct that the Supreme Court has the authority to hear his constitutional complaints, Pl.'s Mem. 12 [Doc. No. 9], this court lacks such authority. See Exxon Mobil Corp., 544 U.S. at 285.

E.      *Younger Abstention Bars Injunctive and Declaratory Relief against the BBO*

Sovereign immunity does not bar Joubert from seeking prospective injunctive relief against Defendant Berman in his official capacity. Greenless v. Almond, 277 F.3d 601, 606-07 (1st Cir. 2002) (citing Ex parte Young, 209 U.S. 123 (1908)).[2] Nor does sovereign immunity bar Joubert from seeking declaratory relief against Defendants in their official capacities. Alden v.

---

[2] Plaintiff does not seek injunctive relief as to the Justices.

8

Maine, 527 U.S. 706, 757 (1999).  Younger abstention, however, bars both claims in federal court.

Younger abstention applies "when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge." Rossi v. Gemma, 489 F.3d 26, 34-35 (1st Cir. 2007). Disciplinary proceedings through the BBO satisfy these elements. First, bar proceedings are judicial in nature. Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 433-34 (1982). Second, the state has "an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses." Id. at 434. Third, as discussed supra, "multiple levels of review exist, up to and including review by the full Supreme Judicial Court." Johnson v. Bd. Of Bar Overseers, 324 F. Supp. 2d 276, 286 (D. Mass. 2004); see S.J.C. Rule 4:01 (describing process for review of BBO/Bar Counsel decision).

Younger abstention therefore applies to BBO/Bar Counsel disciplinary proceedings and precludes this court from enjoining the proceedings. The basic non-interference principle of Younger would be "frustrated as much by a declaratory judgment as it would be by an injunction." Samuels v. Mackell, 401 U.S. 66, 73 (1971); see also Bettencourt, M.D. v. Bd. of Registration in Med. of the Commonwealth of Mass., 904 F.2d 772, 777 (1st Cir. 1990).

"[E]ven if the Younger requirements are satisfied, a federal court may nonetheless intervene to halt an ongoing state judicial proceeding if the plaintiff demonstrates 'bad faith, harassment, or any other unusual circumstance.'" Brooks v. N.H. Sup. Ct., 80 F.3d 633, 639 (1st Cir. 1996) (citing Younger v. Harris, 401 U.S. 37, 54 (1971)). However, Joubert does not allege facts plausibly implicating any of these exceptions to Younger abstention.

**IV.    Conclusion**

For the foregoing reasons, Defendants' <u>Motion to Dismiss</u> [Doc. No. 6] is GRANTED.

IT IS SO ORDERED

September 25, 2023                                  /s/      Indira Talwani
                                                   United States District Judge